## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| SHELTON DENARD DAVIS, | ) | |
|    Petitioner, | ) | |
| | ) | CIVIL ACTION NO. 14-00278-CG |
| v. | ) | |
| | )CRIMINAL ACTION NO. 11-00272-CG-N | |
| UNITED STATES OF AMERICA, | ) | |
|    Respondent. | ) | |

### REPORT AND RECOMMENDATION

Shelton Denard Davis ("Davis"), a federal prisoner proceeding *pro se*, has filed a Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Doc. 68[1]) and supporting memorandum (Doc. 68-1) challenging this Court's judgment against him in the above-styled criminal action.  The United States of America ("Respondent") has filed a response in opposition (Doc. 71) to the § 2255 motion, and Davis has timely filed a reply (Doc. 72) to the response, along with a motion for an evidentiary hearing (Doc. 73) with supporting memorandum (Doc. 74) and a motion to amend his § 2255 motion (Doc. 75) with supporting memorandum (Doc. 76).

Davis's § 2255 motion is now under submission and is ripe for adjudication. This matter has been referred to the undersigned Magistrate Judge for the holding of an evidentiary hearing, if necessary, and for entry of a report and recommendation as to the appropriate disposition, in accordance with 28 U.S.C. § 636(b)(1)(B)-(C), Rule 8(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts, SD ALA LR 7 S.D. Ala. GenLR 72(a)(1), (2)(R)

---

[1] All docket citations (Doc. __) herein refer to the docket of the above-styled criminal action.

(effective Aug. 1, 2015; under old SD ALA LR 72.1(c) prior to that time).  Upon consideration, and for the reasons stated herein, the undersigned **RECOMMENDS** that the motion to amend (Doc. 75) be **GRANTED** but that Davis's § 2255 motion (Doc. 68), as amended (*see* Docs. 75, 76), be **DENIED** without an evidentiary hearing and that this matter be **DISMISSED with prejudice**. The undersigned further **RECOMMENDS** that Davis be found not entitled either to a Certificate of Appealability or to proceed *in forma pauperis* on appeal.

## I.   Applicable Background

On September 30, 2011, the Grand Jury of this district court issued a three-count indictment against Davis, charging as follows:

> **Count One** – conspiracy to possess with intent to distribute over 5 kg of cocaine and more than 280 grams of crack cocaine, in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2.
>
> **Count Two** – possession with intent to distribute approximately one kg of cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.
>
> **Count Three** – attempt to manufacture crack cocaine, in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2.

(Doc. 1 [Indictment]).

On October 19, 2011, attorney Tim W. Fleming, Esq., a member of this Court's CJA Panel, was appointed to represent Davis, and Davis entered a plea of not guilty as to all counts.  (Docs. 10 – 11)  On November 21, 2011, Davis changed his plea and entered a "blind" plea (i.e. one without a written plea agreement) of guilty to Count Two of the indictment, while maintaining his plea of not guilty as to Counts One and Three.  (Doc. 25).  That same day, the Government filed a notice of

intent to offer evidence under Federal Rule of Evidence 404(b) – specifically, Davis's prior arrest relating to his possession with intent to distribute crack cocaine and possession of a firearm on February 23, 2011. (Doc. 24).

On November 22, 2011, Davis changed his plea and entered a "blind" plea of guilty to Count One of the indictment (Doc. 26), with the Government agreeing on the record at the time of the plea only to dismiss Count Three in exchange for the plea. (*See* Doc. 57 at 2). The Probation Office issued a draft presentence investigation report (PSI) for Davis (Doc. 27), to which both Davis and the Government filed objections. (Docs. 28, 29). On March 21, 2012, the Court sentenced Davis to 168 months imprisonment as to each of Counts One and Two, to be served concurrently, followed by a term of supervised release with special conditions. (Doc. 37). Count Three was dismissed on the Government's motion. (*See id.*).

Fleming, on behalf of Davis, filed a notice of appeal of the criminal judgment (Doc. 39), along with a motion to withdraw as counsel on appeal, citing a breakdown in the attorney-client relationship (Doc. 40). Fleming was permitted to withdraw, and Robert Ratliff, Esq., another member of the Court's CJA Panel, was appointed as appellate counsel for Davis. (Doc. 43). On appeal, Davis challenged only his sentence, and on April 23, 2013, the U.S. Court of Appeals for the Eleventh Circuit affirmed Davis's sentence in an unpublished opinion, (Doc. 64); *United States v. Davis*, 517 F. App'x 841 (per curiam), with the Eleventh Circuit's mandate issuing

3

May 23, 2013 (Doc. 65).  On October 7, 2013, the U.S. Supreme Court denied Davis's petition for a writ of certiorari.  (Doc. 66); 134 S. Ct. 269.

On May 12, 2014 (the date Davis declares under penalty of perjury that it was delivered to prison officials for mailing), Davis filed the present § 2255 motion[2] (Doc. 68).

## II.  <u>Claims for Relief</u>[3]

<u>**Claim 1**</u> – ineffective assistance of counsel by trial counsel, Fleming, due to his alleged:

A.  failure to challenge the indictment as "multiplicious;"

B.  failure to "submit a motion seeking discovery," by which he "would have learned that Mr. Davis was being double charged for conduct listed in count one and three;"

C.  failure to inform Davis of his right to a bench trial, as "had he presented his issues before the judge, the outcome of his case would have been different, such as the presiding judge would have noticed that the indictment was flawed, and that Mr. Davis was being charged twice for the same conduct in counts one, and three" and "would have corrected the error by dismissing Count Three, leaving the government only with Count One, and Two, to negotiate a plea agreement;"

---

[2] The Respondent does not contest that Davis's motion was timely filed under 28 U.S.C. § 2255(f).

[3] The undersigned abides by the Eleventh Circuit's directive to "liberally construe *pro se* filings, including *pro se* applications for relief pursuant to § 2255."  *Winthrop-Redin v. United States*, 767 F.3d 1210, 1215-16 (11th Cir. 2014).

D.   "failure to read and review documents disclosed which contained

potentially exculpatory materials," as "had his counsel adequately, and

thoroughly reviewed the discovery/records involved in his case, then

the fact of he (Mr. Davis) being charged twice for the same conduct

would have been exposed, and presented to the judge and the

indictment would have been dismissed, or count three would have been

dismissed, due to double jeopardy;"

E.   failure to file opposition to the Government's Rule 404(b) notice;

F.   failure to file any pretrial motions, has "had counsel filed either motion

listed from [claims] A-E Mr. Davis [sic] sentence would have been

different, because count three would have been officially dismissed;"

G.   failure to "move for an evidentiary hearing to properly assess the

allege [sic] evidence being brought against Mr. Davis[,]" as "had

counsel sought an evidentiary hearing in regards to Mr. Davis [sic]

case and evidence, the proceedings would have displayed to each party

in open court before the judge that Mr. Davis was being charged twice

for the same conduct[;]"

H.   providing "erroneous advice on several occasions encouraging [Davis]

to abandon legitimate meritorious arguments" – more specifically:

i.   advising Davis "to agree to what ever the judge was

saying during the plea arraignment regarding the conduct and

arrest of Alvarez, prior to [Davis's] arrest.  Counsel knew that

Mr. Davis was not aware of what took place during Alvarez's arrest because he wasn't there.  Counsel knew that Alvarez had given the officers an [sic] lengthy list of allege [sic] drug activities of his involvment [sic] with other individuals in the drug trade.  Counsel knew or should have known that by having his client to just agree/stipulate to what allegedly took place would ultimately erroneously add more drugs to what Mr. Davis was responsible for;"

ii.      "strongly advis[ing]" Davis "to abandon his legitimate objection to the erroneous application of two extra levels to his offense level in relation to an allege [sic] firearm violation, which was in no way related to the underline [sic] offense;"

iii.      advising Davis "early in the proceedings of his case…to agree to a document, later identified as a stipulation[,]" without "fully explain[ing] what the document entailed, but assur[ing] Mr. Davis that it would not affect his case;"

I.      "agree[ing] to the accuracy of the governments [sic] evidence with out first conducting his own assessment of all the evidence being presented against Mr. Davis," from which "several meritorious claims would have been detected, claims such as multiplicity, etc…"

J.      failure to prepare for sentencing, as counsel "did not do his own investigation regarding Mr. Davis's prior conviction, or offered [sic] any

evidence to support the use or statues [sic] of Mr. Davis [sic] prior

convictions;"

**Claim 2** – Prosecutorial misconduct, as the Government allegedly "committed the act of duplicity by submitting an [sic] multiplicious indictment, to obtain an [sic] conviction" and "induce/force [Davis] into entering a less favorable plea agreement."

**Claim 3** – Davis's indictment was multiplicitous, in violation of the Fifth Amendment to the United States Constitution.

**Claim 4** – ineffectiveness of appellate counsel, Ratliff, for failing to raise on appeal the issue of ineffective assistance of trial counsel for the reasons stated in Claims 1(A) through 1(J), *see supra* (correspondingly identified as Claims 4(A) through 4(J)).

**Claim 5** (raised in Davis's reply and motion to amend) – (A) The Government improperly used the unproven, hearsay statements of a co-conspirator to indict Davis, and (B) counsel was ineffective for not challenging the indictment on this ground.

Davis also alleges that, even if none of the alleged errors individually would warrant relief under § 2255, their cumulative effect would.

### III.   Applicable Law

### A.   General Standards Under § 2255

Title 28 U.S.C. § 2255 "permits a federal prisoner to bring a collateral challenge by moving the sentencing court to vacate, set aside, or correct the

sentence." *Winthrop-Redin v. United States*, 767 F.3d 1210, 1215-16 (11th Cir. 2014). Specifically, § 2255 provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence ... If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

28 U.S.C. § 2255(a)-(b).

"Once the defendant's chance to appeal has been waived or exhausted," a court is "entitled to presume he stands fairly and finally convicted, especially when, as here, he already has had a fair opportunity to present his federal claims to a federal forum." *United States v. Frady*, 456 U.S. 152, 164 (1982). "[A] collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (per curiam) (citing *Frady*, 456 U.S. at 165 (collecting cases)). "Because collateral review is not a substitute for a direct appeal, the general rules have developed that: (1) a defendant must assert all available claims on direct appeal, and (2) relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would,

if condoned, result in a complete miscarriage of justice.   Accordingly, a non-constitutional error that may justify reversal on direct appeal does not generally support a collateral attack on a final judgment unless the error (1) could not have been raised on direct appeal and (2) would, if condoned, result in a complete miscarriage of justice."   *Id.* at 1232-33 (internal citations, quotations, and footnote omitted).

> Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding. *McCoy v. United States,* 266 F.3d 1245, 1258 (11th Cir. 2001); *Jones v. United States,* 153 F.3d 1305, 1307 (11th Cir. 1998); *Mills*[ *v. United States*], 36 F.3d [1052,] 1055[ (11th Cir. 1994)]; *Greene v. United States,* 880 F.2d 1299, 1305 (11th Cir. 1989). This rule generally applies to all claims, including constitutional claims. *See Reed v. Farley,* 512 U.S. 339, 354, 114 S. Ct. 2291, 2300, 129 L. Ed. 2d 277 (1994) ("Where the petitioner—whether a state or federal prisoner—failed properly to raise his claim on direct review, the writ is available only if the petitioner establishes cause for the waiver and shows actual prejudice resulting from the alleged violation." (internal quotation marks, punctuation, and citations omitted)); *see also Wainwright v. Sykes,* 433 U.S. 72, 84, 97 S. Ct. 2497, 2505, 53 L. Ed. 2d 594 (1977) (applying cause and prejudice standard to constitutional claims).
>
> A defendant can avoid a procedural bar only by establishing one of the two exceptions to the procedural default rule. Under the first exception, a defendant must show cause for not raising the claim of error on direct appeal *and* actual prejudice from the alleged error. *Bousley v. United States,* 523 U.S. 614, 622, 118 S. Ct. 1604, 1611, 140 L. Ed. 2d 828 (1998); *Mills,* 36 F.3d at 1055; *Cross v. United States,* 893 F.2d 1287, 1289 (11th Cir. 1990); *Greene,* 880 F.2d at 1305; *Martorana v. United States,* 873 F.2d 283, 284 (11th Cir. 1989); *Parks v. United States,* 832 F.2d 1244, 1246 (11th Cir. 1987). Under the second exception, a court may allow a defendant to proceed with a § 2255 motion despite his failure to show cause for procedural default if " 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.' " *Mills,* 36 F.3d at 1055 (quoting *Murray v. Carrier,* 477 U.S. 478, 496, 106 S. Ct. 2639, 2649, 91 L. Ed. 2d 397

(1986)); *see also Bousley,* 523 U.S. at 622, 118 S. Ct. at 1611; *Jones,* 153 F.3d at 1307.

*Id.* at 1234-35 (footnote omitted).

> Once a petitioner files a § 2255 motion, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall ... grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." [28 U.S.C.] § 2255(b). A petitioner is entitled to an evidentiary hearing if he "alleges facts that, if true, would entitle him to relief." *Aron[ v. United States*], 291 F.3d [708,] 715[ (11th Cir. 2002)] (quoting *Holmes v. United States,* 876 F.2d 1545, 1552 (11th Cir. 1989)). "[A] petitioner need only *allege*—not prove—reasonably specific, non-conclusory facts that, if true, would entitle him to relief." *Id.* at 715 n.6. However, a district court need not hold a hearing if the allegations are "patently frivolous," "based upon unsupported generalizations," or "affirmatively contradicted by the record." *Holmes,* 876 F.2d at 1553 (quoting *United States v. Guerra,* 588 F.2d 519, 520–21 (5th Cir. 1979)); *see, e.g., Lynn v. United States,* 365 F.3d 1225, 1239 (11th Cir. 2004) ("Because the ... affidavits submitted by Lynn amount to nothing more than mere conclusory allegations, the district court was not required to hold an evidentiary hearing on the issues and correctly denied Lynn's § 2255 motion.").

*Winthrop-Redin*, 767 F.3d at 1216 (footnote omitted).

### B.   Ineffective Assistance of Counsel

The Sixth Amendment gives criminal defendants the right to effective assistance of counsel. U.S. Const., amend. VI; *Strickland v. Washington*, 466 U.S. 668, 684–86 (1984). "To establish an ineffective assistance of counsel claim, a defendant must show that (1) 'counsel's representation fell below an objective standard of reasonableness' and (2) that such failure prejudiced him in that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *United States v. Pease*, 240 F.3d 938, 941 (11th Cir. 2001) (per curiam) (quoting *Strickland*, 466 U.S. at 687-88, 694). "

'Conclusory allegations of ineffective assistance are insufficient.' " *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992) (per curiam) (quoting *United States v. Lawson*, 947 F.2d 849, 853 (7th Cir. 1991)). "Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa." *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) (citation omitted). *See also Osley v. United States*, 751 F.3d 1214, 1222 (11th Cir. 2014) ("A habeas petitioner claiming ineffective assistance of counsel must carry his burden on both *Strickland* prongs, and a court need not address both prongs if the defendant has made an insufficient showing on one."); *Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001) ("The petitioner bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a *Strickland* claim, and both prongs must be proved to prevail. The *Strickland* test is not easily met; as we have said, 'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.[]' " (quoting *Waters v. Thomas,* 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (citation omitted))).

"The test for ineffectiveness is not whether counsel could have done more; perfection is not required." *Waters v. Thomas*, 46 F.3d 1506, 1518 (11th Cir. 1995) (en banc). "A lawyer can almost always do something more in every case. But the Constitution requires a good deal less than maximum performance." *Atkins v. Singletary*, 965 F.2d 952, 960 (11th Cir. 1992).

> In evaluating the first, or "performance," prong of *Strickland,* "[j]udicial scrutiny of counsel's performance must be highly

deferential." [*Strickland*, 466 U.S.] at 689, 104 S. Ct. at 2065. Because retrospective evaluation of a lawyer's performance can be difficult, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that ... the challenged action might be considered sound trial strategy." *Id.* (internal quotations omitted). A petitioner must identify specific acts or omissions that were not the result of reasonable professional judgment, and a court should deem these acts or omissions deficient only if they "were outside the wide range of professionally competent assistance." *Id.* at 690, 104 S. Ct. at 2066. Simply put, the deference afforded an attorney's decision is great and the bar for proving a Sixth Amendment violation is high. In light of the "strong presumption in favor of competence," we have held that in order to prove deficient performance, "a petitioner must establish that no competent counsel would have taken the action that his counsel did take." *Chandler v. United States,* 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).

Under the second, or "prejudice," prong of Strickland, a petitioner must "affirmatively prove prejudice" by showing that counsel's errors "actually had an adverse effect on the defense." 466 U.S. at 693, 104 S. Ct. at 2067. This requires a showing of more than "some conceivable effect on the outcome of the proceeding." *Id.* Instead, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S. Ct. at 2068. Although this standard is difficult to meet, it is significant that a petitioner must show only a reasonable probability that the outcome would have been different; he "need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Id.* at 693, 104 S. Ct. at 2068. When evaluating this probability, "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Id.* at 695, 104 S. Ct. at 2069.

*Brownlee v. Haley*, 306 F.3d 1043, 1059-60 (11th Cir. 2002).

"[F]ailure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." *Massaro v. United States*, 538 U.S. 500, 509 (2003). Indeed, "in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of

ineffective assistance." *Id.* at 504.  *See also United States v. Curbelo*, 726 F.3d 1260, 1267 (11th Cir. 2013) ("An ineffective assistance claim should usually be raised in a motion under 28 U.S.C. § 2255." (citing *United States v. Patterson*, 595 F.3d 1324, 1328 (11th Cir. 2010))), *cert. denied*, 134 S. Ct. 962 (2014).

## C.   Effect of Guilty Plea

"A defendant who enters a plea of guilty waives all nonjurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained." *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992).  *See also, e.g.*, *United States v. Brown*, 752 F.3d 1344, 1347 (11th Cir. 2014) (" 'A guilty plea, since it admits all the elements of a formal criminal charge, waives all non-jurisdictional defects in the proceedings against a defendant.' " (quoting *United States v. Fairchild*, 803 F.2d 1121, 1124 (11th Cir. 1986) (per curiam)); *United States v. Saac*, 632 F.3d 1203, 1208 (11th Cir. 2011) (" 'Generally, entering a guilty plea waives a defendant's right to all non-jurisdictional challenges to a conviction.' " (quoting *United States v. Bonilla,* 579 F.3d 1233, 1240 (11th Cir. 2009)).  Stated differently, "a voluntary and intelligent plea made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508 (1984).  Therefore, when a § 2255 motion is filed collaterally challenging convictions obtained pursuant to guilty pleas, "the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." *United States v. Broce*, 488 U.S. 563, 569 (1989).  *See also Bousley v. United States*, 523 U.S. 614, 618 (1998) ("A

plea of guilty is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.' (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)).  Moreover, "even the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." *Bousley*, 523 U.S. at 621. *Accord United States v. Pearl*, 288 F. App'x 651, 655 (11th Cir. 2008) (per curiam) (unpublished).

> "A guilty plea is open to attack on the ground that counsel did not provide the defendant with 'reasonably competent advice.' " *Cuyler v. Sullivan*, 446 U.S. 335, 344, 100 S. Ct. 1708, 1716, 64 L. Ed. 2d 333 (1980) (quoting *McMann*[ *v. Richardson*], 397 U.S. [759,] 770, 90 S. Ct. [1441,] 1448[ (1970)]). The Supreme Court has held "that the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985); *Slicker v. Dugger*, 878 F.2d 1380, 1381 n.1 (11th Cir. 1989) (per curiam); *Holmes v. United States*, 876 F.2d 1545, 1551 (11th Cir. 1989); *McCoy v. Wainwright*, 804 F.2d 1196, 1198 (11th Cir. 1986) (per curiam)…
>
> …
>
> …*Hill* clarified the *Strickland* second or "prejudice" requirement in the context of guilty pleas: "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." 474 U.S. at 59, 106 S. Ct. at 370; *Tahamtani v. Lankford*, 846 F.2d 712, 714 (11th Cir. 1988) (per curiam); *see Long v. United States*, 883 F.2d 966, 968 n.4 (11th Cir. 1989) (per curiam); *Agan v. Dugger*, 835 F.2d 1337, 1340 n.6 (11th Cir. 1987), *cert. denied*, 487 U.S. 1205, 108 S. Ct. 2846, 101 L. Ed. 2d 884 (1988); *see also Holmes*, 876 F.2d at 1553, *Slicker v. Wainwright*, 809 F.2d 768, 770 (11th Cir. 1987) (These cases were remanded to the district court to determine if accurate, rather than incorrect, information by the defense counsel as to the length of sentence would have changed the defendant's plea.); *cf. Betancourt v. Willis*, 814 F.2d 1546, 1549 (11th Cir. 1987) (This court affirmed the district court's granting a habeas corpus petition based upon its conclusion that petitioner's plea was not voluntary and that his counsel provided ineffective assistance because the evidence was "uncontroverted that petitioner was completely unaware of the

ultimate consequences of his plea because his counsel misrepresented the existence of a sentence reduction agreement."). The *Hill* court explained the prejudice requirement with specific regard to a defense counsel's alleged failure to investigate potentially exculpatory evidence:

> In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.[4]

474 U.S. at 59, 106 S. Ct. at 370; *McCoy*, 804 F.2d at 1198–99.

The Supreme Court has given finality to guilty pleas by precluding claims of constitutional deprivations occurring prior to entry of the plea. *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S. Ct. 1602, 1608, 36 L. Ed. 2d 235 (1973); *see Tiemens v. United States*, 724 F.2d 928, 929 (11th Cir.) (per curiam) ("[A] guilty plea waives all nonjurisdictional defects occurring prior to the time of the plea, including violations of the defendant's rights to a speedy trial and due process."), *cert. denied*, 469 U.S. 837, 105 S. Ct. 134, 83 L.Ed.2d 74 (1984). The Court allows

---

[4] *Hill* continued:

> Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial. *See, e.g.*, *Evans v. Meyer*, 742 F.2d 371, 375 (CA7 1984) ("It is inconceivable to us ... that [the defendant] would have gone to trial on a defense of intoxication, or that if he had done so he either would have been acquitted or, if convicted, would nevertheless have been given a shorter sentence than he actually received"). As []explained in *Strickland v. Washington*, []these predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the "idiosyncrasies of the particular decisionmaker." *Id.,* 466 U.S., at 695, 104 S. Ct., at 2068.

474 U.S. at 59-60.

only challenges to the voluntary and intelligent entry of the plea if a convicted defendant can prove "serious derelictions" in his counsel's advice regarding the plea. *McMann*, 397 U.S. at 774, 90 S. Ct. at 1450; *Tollett*[ *v. Henderson*], 411 U.S. [258,] 267, 93 S. Ct. [1602,] 1608[ (1973)]; *see Hill*, 474 U.S. at 56, 106 S. Ct. at 369 ("The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.' " (quoting *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S. Ct. 160, 164, 27 L. Ed. 2d 162 (1970)). Without "reasonably effective assistance of counsel in connection with the decision to plead guilty," a defendant cannot enter a knowing and voluntary plea because the plea does not represent an informed choice. *McCoy*, 804 F.2d at 1198; *Scott*[ *v. Wainwright*], 698 F.2d [427,] 429[ (11th Cir. 1983)]. Based upon his familiarity with the facts and law, defense counsel must advise the defendant. *Scott*, 698 F.2d at 429. "Counsel's advice need not be errorless, and need not involve every conceivable defense, no matter how peripheral to the normal focus of counsel's inquiry, but it must be within the realm of competence demanded of attorneys representing criminal defendants." *Id.* (emphasis added); *see McMann*, 397 U.S. at 771, 90 S. Ct. at 1449; *Long*, 883 F.2d at 969.

The Supreme Court has recognized that the decision to plead guilty may occur without all of the state's evidence and necessarily takes place without knowledge of all facts revealed by witnesses at trial. *McMann*, 397 U.S. at 769–70, 90 S. Ct. at 1448. "[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial." *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984) (per curiam); *Downs–Morgan v. United States*, 765 F.2d 1534, 1539 (11th Cir. 1985). An attorney's responsibility is to investigate and to evaluate his client's options in the course of the subject legal proceedings and then to advise the client as to the merits of each. *Tafero*, 796 F.2d at 1320; *Thompson v. Wainwright*, 787 F.2d 1447, 1451 (11th Cir. 1986), *cert. denied*, 481 U.S. 1042, 107 S. Ct. 1986, 95 L. Ed. 2d 825 (1987)…

*Stano v. Dugger*, 921 F.2d 1125, 1149-51 (11th Cir. 1991) (en banc) (footnote omitted). *Accord, e.g., Jones v. White*, 992 F.2d 1548, 1557 (11th Cir. 1993) ("The Supreme Court has held 'that the two-part *Strickland v. Washington* test applies to

challenges to guilty pleas based on ineffective assistance of counsel.' *Hill*, 474 U.S. at 58, 106 S. Ct. at 370. Under the *Strickland* test, Garrett initially must show 'that counsel's representation fell below an objective standard of reasonableness.' *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). While it need not be errorless, counsel's advice '*must be within the realm of competence demanded of attorneys representing criminal defendants.*' *Stano*, 921 F.2d at 1151. Providing meaningful advice on the options available to a defendant obligates counsel 'to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.' *Strickland*, 466 U.S. at 691, 104 S. Ct. at 2066. *Hill* modified the second part of the *Strickland* test in the context of a guilty plea. Garrett 'must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' 474 U.S. at 59, 106 S. Ct. at 370."). In claiming prejudice under *Strickland*, "[a] movant must allege facts that would prove that a decision not to plead guilty 'would have been rational under the circumstances.' " *Hernandez v. United States*, 778 F.3d 1230, 1234 (11th Cir. 2015) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)).

> [P]lea bargaining retains its benefits of certainty and efficiency "only if dispositions by guilty plea are accorded a great measure of finality." *Blackledge v. Allison,* 431 U.S. 63, 71, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977); *see id.* ("To allow indiscriminate hearings in federal postconviction proceedings ... for federal prisoners under 28 U.S.C. § 2255 ... would eliminate the chief virtues of the plea system—speed, economy, and finality."). While § 2255 exists "to safeguard a person's freedom from detention in violation of constitutional guarantees," ... "[m]ore often than not a prisoner has everything to gain and nothing to lose from filing a collateral attack upon his guilty plea." *Id.* at 71–72,

> 97 S. Ct. 1621. As a result, "the representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Id.* at 73–74, 97 S. Ct. 1621; *see id.* at 80 n. 19, 97 S. Ct. 1621 (explaining that if the record reflects the procedures of plea negotiation and includes a verbatim transcript of the plea colloquy, a petitioner challenging his plea will be entitled to an evidentiary hearing "only in the most extraordinary circumstances"). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Id.* at 74, 97 S. Ct. 1621.

*Winthrop-Redin*, 767 F.3d at 1216.

In sum, because " '[s]olemn declarations in open court carry a strong presumption of verity[,]' *Blackledge,* 431 U.S. at 74, 97 S. Ct. 1621[,]" when a defendant "ma[k]e[s] statements under oath at a plea colloquy, 'he bears a heavy burden to show his statements were false.' *United States v. Rogers,* 848 F.2d 166, 168 (11th Cir. 1988) (per curiam)." *Id.* at 1217 (some alterations added). *Accord, e.g.*, *United States v. Gonzalez–Mercado,* 808 F.2d 796, 800 n.8 (11th Cir. 1987) ("While Rule 11 is not insurmountable, there is a strong presumption that the statements made during the colloquy are true."); *United States v. Cardenas*, 230 F. App'x 933, 935 (11th Cir. 2007) (unpublished) ("We apply a 'strong presumption' that statements made by a defendant during his plea colloquy are true, *United States v. Medlock,* 12 F.3d 185, 187 (11th Cir. 1994); therefore, 'when a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false.' *United States v. Rogers,* 848 F.2d 166, 168 (11th Cir. 1988)."). Nothing in the record shows that Cardenas has satisfied his burden of showing that his sworn statements made during the plea colloquy-including that no

one had predicted what sentence he would receive-were false; and we reject his claim that his guilty plea was involuntary.").

## IV.  <u>Analysis</u>

### A.   *Multiplicity of Indictment*

The majority of Davis's ineffective assistance of counsel claims hinge on his belief that the indictment was multiplicitous.  This contention is erroneous.

> [Courts] analyze issues of double jeopardy under the test set forth by the Supreme Court in *Blockburger v. United States,* 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932). *United States v. Hassoun,* 476 F.3d 1181, 1185 (11th Cir. 2007). Under *Blockburger,* when a single, completed criminal transaction violates two or more criminal statutes, the Double Jeopardy Clause does not shield a defendant against prosecution under one or more of the applicable statutes so long as "each statute requires proof of an additional fact which the other does not ...." *Blockburger,* 284 U.S. at 304, 52 S. Ct. at 182. The *Blockburger* test is one of statutory interpretation in which [a court] examine[s] the elements of each offense to determine whether Congress intended to authorize cumulative punishments. *Albernaz v. United States,* 450 U.S. 333, 337, 101 S. Ct. 1137, 1141, 67 L. Ed. 2d 275 (1981); *Hassoun,* 476 F.3d at 1185.
>
> ...
>
> An indictment is multiplicitous if it charges a single offense in more than one count. *Ward v. United States,* 694 F.2d 654, 660-61 (11th Cir. 1983) (quoting *United States v. De La Torre,* 634 F.2d 792, 794 (5th Cir.1981)). A multiplicitous indictment not only subjects the defendant to numerous sentences for one offense, but also "prejudice[s] the defendant and confuse[s] the jury by suggesting that not one but several crimes have been committed." *United States v. Hearod,* 499 F.2d 1003, 1005 (5th Cir.1974) (per curiam). A multiplicitous indictment therefore violates the principles of double jeopardy because it gives the jury numerous opportunities to convict the defendant for the same offense. [Courts] use the *Blockburger* test to determine whether an indictment is multiplicitous, verifying that each count requires an element of proof that the other counts do not require. *Ward,* 694 F.2d at 661.

*United States v. Williams*, 527 F.3d 1235, 1240-41 (11th Cir. 2008) (footnote omitted).   "[C]harges are not multiplicitous where they differ by even a single element or alleged fact."   *United States v. Vargas*, 563 F. App'x 684, 687 (11th Cir. 2014) (per curiam) (unpublished) (citing *United States v. Costa*, 947 F.2d 919, 926 (11th Cir. 1991) ("In order to avoid multiplicity, only one fact or element need be different between each charge.")).

First, the crime of conspiracy, as alleged in Count One, is separate and distinct from both the underlying substantive offense, as alleged in Count Two, *see United States v. Ternus*, 598 F.3d 1251, 1254-55 (11th Cir. 2010) (A " 'conspiracy and the related substantive offense which is the object of the conspiracy are separate and distinct crimes.' " (quoting *United States v. Sarro*, 742 F.2d 1286, 1293 (11th Cir. 1984)); *United States v. Lewis*, 621 F.2d 1382, 1390 (5th Cir. 1980) ("A conspiracy charge … is not multiplicitous when joined with substantive charges under 21 U.S.C. § 841(a)(1)."),[5] and from the crime of attempt, as alleged in Count Three, *see United States v. Anderson*, 651 F.2d 375, 378 (5th Cir. July 22, 1981) ("It is established that attempts where prohibited in the statute are prosecuted and punished as substantive crimes separate and apart from the offense of conspiracy." (citing *United States v. Meacham*, 626 F.2d 503, 508 (5th Cir. 1980)); *United States v. Plummer*, 221 F.3d 1298, 1306 (11th Cir. 2000) ("Attempt, like conspiracy, is an inchoate crime that can be committed regardless of whether the object of the venture is achieved.").   Second, Counts One and Two concern possession of a

_____

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

controlled substance <u>with the intent to distribute</u>, while Count Three concerns the distinct action of <u>manufacturing</u> a controlled substance, regardless of the intent to distribute. *See Lewis*, 621 F.2d at 1390 ("The manufacturing and possession with intent to distribute counts are derived from the same sentence of 21 U.S.C. s 841(a)(1), … but they are not multiplicitious … [T]he two offenses require different elements of proof. *United States v. Goodman*, 605 F.2d 870 (5th Cir. 1979).")

As such, none of the counts in Davis's indictment is multiplicitous of another, and a motion challenging the indictment on this ground would have been denied. Because counsel is not ineffective for failing to file a meritless motion, *see, e.g.*, *Brownlee*, 306 F.3d at 1066 ("Counsel was not ineffective for failing to raise these issues because they clearly lack merit."); *United States v. Curbelo*, 726 F.3d 1260, 1267 (11th Cir. 2013) ("[I]t goes without saying that counsel is not ineffective for failing to file a meritless suppression motion."), or failing to raise a meritless issue on appeal, *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) ("Appellate counsel is not ineffective for failing to raise claims reasonably considered to be without merit." (quotation omitted)), all of Davis's ineffective assistance of counsel claims based on failure to challenge the indictment as multiplicitous must fail.

For this reason, Davis is due no relief on Claims 2 and 3, on Claims 1(A) and 4(a), and for any other claim of ineffective assistance of counsel in Claims 1 and 4 based on the failure to raise the issue of multiplicity.

### B.    *Other Ineffectiveness Claims*

### 1.    **Unsupported Generalities**

Stripping away Davis's meritless claims that both his trial and appellate counsel were ineffective for failing to discover and challenge the multiplicious nature of the indictment, most of Davis's remaining ineffectiveness claims are based on unsupported generalizations – e.g. counsel failed to conduct discovery, failed to properly advise Davis, failed to file motions, failed to challenge the Government's evidence – which do not merit even an evidentiary hearing, let alone relief from his criminal judgment. *See Winthrop-Redin*, 767 F.3d at 1216. To sufficiently allege that counsel's performance was deficient under *Strickland*, Davis "must identify **specific** acts or omissions that were not the result of reasonable professional judgment..." *Brownlee*, 306 F.3d at 1059 (emphasis added). General assertions that counsel could or should have done more are insufficient.

Even assuming that any of these generalizations are sufficient to show that counsel acted deficiently, they are not enough to show a meritorious ineffective assistance claim. Under *Strickland* and its progeny, Davis must also allege reasonably specific, non-conclusory facts that he was prejudiced by those errors – that is, "that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. Davis does not identify any specific issues of merit that Fleming would have uncovered or presented to the Court that might have affected the proceedings, and as explained previously, counsel cannot be deemed ineffective for failing pursue meritless claims. *See also United States v. Reinhard*, No. 4:08CR49-RH/CAS, 2014 WL 3891298, at *5 (N.D.

Fla. Aug. 8, 2014) ("Counsel is not ineffective under *Strickland* for failing to preserve or argue a meritless claim." (citing cases)).

Disregarding the issue of multiplicity, Davis' ineffectiveness claims raised in Claims 1(B) (failure to "submit a motion seeking discovery"), 1(C) (failure to inform Davis of his right to a bench trial), 1(D) (failure to read and review documents to discover exculpatory material), 1(E) (failure to challenge Government's intent to introduce Rule 404(b) evidence), 1(F) (failure to file any pretrial motions), 1(G) (failure to move for an evidentiary hearing), 1(I) ("agree[ing] to the accuracy of the governments [sic] evidence with out first conducting his own assessment of all the evidence"), and 1(J) (failure to prepare for sentencing) consist of nothing more than unsupported generalizations, which may be dismissed without an evidentiary hearing. *See Winthrop-Redin*, 767 F.3d at 1216. For this reason, Davis is due no relief on Claims 1(B), (C), (D), (E), (F), (G), (I), (H)(i), H(iii), and (J), and on Claims 4(B), (C), (D), (E), (F), (G), (I), (H)(i), H(iii), and (J).

## 2.   Claims Contradicted by Guilty Plea Colloquies

At both of his guilty plea colloquies, Davis testified, under oath, that he was satisfied with Fleming's advice and representation, that he was not being forced to plead guilty, that he was pleading guilty of his own free will because he was guilty, and that he understood he was giving up his right to a trial. (*See* Docs. 56, 57 [Guilty Plea Transcripts]). When presented with factual proffers supporting each of the offenses to which he pled guilty, Davis agreed that the Government could prove those facts. (*See id.*). These sworn representations contradict Davis's assertions of

ineffectiveness in Claims 1(A), (B), (C), (D), (E), (F), (G), (H)(i), (H)(iii), and (I), and Davis has made no attempt to explain why those "solemn declarations" were false. For this reason, Davis is due no relief as to those claims.

### 3.   Firearm Enhancement - Claim 1(H)(ii) & 4(H)(ii)

The only other substantive claim of ineffective assistance of counsel Davis alleges was in Fleming's decision not to pursue at sentencing his objection to the two-level enhancement for possession of a firearm under the United States Sentencing Guidelines (U.S.S.G.) § 2D1.1(b)(1) (2011) (Claim 1(H)(ii)).

> Under § 2D1.1(b)(1), a defendant's offense level increases by two levels if a dangerous weapon was possessed. U.S.S.G. § 2D1.1(b)(1). "The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, cmt. n. 11(A). To justify a firearms enhancement, the government must establish by a preponderance of the evidence either (1) that the firearm was present at the site of the charged conduct, or (2) that the defendant possessed a firearm during conduct associated with or relevant to the offense of conviction. *United States v. Stallings,* 463 F.3d 1218, 1220 (11th Cir. 2006). If the government meets its burden, then the burden shifts to the defendant to show that a connection between the weapon and the offense was clearly improbable. *Id.* Failure to produce such evidence permits a district court to apply the enhancement. *United States v. Hall,* 46 F.3d 62, 63–64 (11th Cir.1995) (per curiam).

*United States v. Garcia*, 590 F. App'x 915, 917-18 (11th Cir. Nov. 4, 2014) (per curiam) (unpublished).

Davis's PSI noted, *inter alia*, that Davis "was found to have a previous arrest in Winston-Salem, North Carolina, in February of 2011 for trafficking in cocaine, manufacturing cocaine, possession with intent to sell/deliver cocaine, and possession of a firearm by a felon." (Doc. 30 at 5 – 6, ¶ 18).  Thus, the PSI noted: "Pursuant to

the provisions found in U.S.S.G. § 2D1.1(b)(1), because the defendant was in possession of a firearm when he was arrested on February 25, 2011, the offense level is increased by two-levels." (*Id.* at 8, ¶ 27). Overall, the PSI proposed a base offense level of 32, with a criminal history category of V (*see id.*), which provides for a sentencing range of 188 – 235 months. *See* U.S.S.G. Ch. 5 Pt. A.

Both the Government and Davis filed objections to the PSI. The Government asserted that the base offense level should have been increased to 38 due to the nature of Davis's drug activities and that Davis did not deserve credit for acceptance of responsibility. (*See* Doc. 29). Fleming, on behalf of Davis, *inter alia*, "object[ed] to a 2 level increase for alleged possession of a weapon on February 25, 2011 in North Carolina[,]" contending "that his conduct and/or any alleged facts involving his February, 2011 arrest in North Carolina is irrelevant, immaterial and not related in any way to the charges before this court." (Doc. 28 at 1).

At the sentencing hearing, Fleming maintained and argued objections only as to the calculation of Davis's criminal history category. (*See* Doc. 58 [Sentencing Hearing Trans.] at 1 – 6). After the Court overruled those objections and asked if there were any others outstanding, Fleming and counsel for the Government explained that they had "come to an agreement" whereby both Davis and the Government would withdraw certain objections to the Presentence Investigation Report, so that the Government would not have "to go forward with a lengthy hearing … , traveling witnesses from North Carolina down here[;]" the Government would recommend that Davis receive a one-point guidelines reduction for

acceptance of responsibility, resulting in Davis having a total offense level of 31 under the guidelines with a criminal history category of V; and the Government would recommend a sentence at the low end of the guidelines range. (*See id.* at 5 – 9). This compromise resulted in a base offense level of 31 with a criminal history category of V (*id.* at 6), which provides for a sentencing range of 168 – 210 months. *See* U.S.S.G. Ch. 5 Pt. A.

When the Court gave Davis an opportunity to speak, Davis again objected that "the stuff that happened in North Carolina had nothing to do with this at all." (*Id.* at 9). The Court then asked Fleming to comment on Davis's representations, resulting in the following exchange:

> MR. FLEMING: Judge, I believe our agreement with the government basically resolves that issue. The government has backed off their position of trying to increase the offense level up to level 38, as their position had taken. And we have compromised somewhat in our beliefs. It's our position that, being a level 29, I think everything that's going on in this case is appropriate and is going on course.
>
> THE COURT: When you say level 29, the offense level I found was level 31.
>
> MR. FLEMING: I'm sorry. Our position when we originally submitted our objections was a level 29.
>
> THE COURT: I see. I see.
>
> MR. FLEMING: So we have made concessions and the government has made concessions.
>
> THE COURT: All right. Well, Mr. Davis, are you content to continue this way, giving the concessions made by government?
>
> THE DEFENDANT: I have no choice, ma'am.
>
> THE COURT: You do have a choice. The choice is that you insist that

the government prove the things that are alleged to be the adjustments to the guideline range. And basically all we're talking about here is, as I understand it, is the gun points. Is there something else that's attributable to the activity in North Carolina?

MS. BEDWELL: The government's position was the defendant was in the business of distributing cocaine once it had been converted into crack cocaine and that would have increased the offense level up to a 38. We were prepared with testimony this morning to support the government's position with regard to the conversion ratio of cocaine powder to crack cocaine and the evidence relating to the defendant's arrest and apprehension in connection with the North Carolina arrest. The facts of that are contained in the presentence report. So the Court would consider it either way, either as other criminal history on the part of the defendant or as relevant conduct to this offense.

In negotiating the settlement this morning, the government has agreed to withdraw that offer of proof, which saves the defendant in essence seven levels off of the guideline calculation. But if he is dissatisfied with the agreement, we certainly would ask the Court to allow us the opportunity to present that evidence and let the Court make those findings based on the evidence.

That's the choice that the defendant had. And it was our understanding this morning that the defendant had elected to agree to the compromise that had been proposed as a settlement for the difference in the guideline factors. And as I indicated, the Court, under the statutory factors, is not bound by the guideline range under any circumstance, but the government submits that in considering the statutory factors, the sentence, the low end of the guideline sentence under the presently calculated guideline range, is a reasonable sentence under these circumstances.

THE COURT: Mr. Fleming? Do you want to sit down and talk to your client some more? Because if he insists that the government prove that the North Carolina -- and really, as I say, the drug amount to me is included as relevant conduct. So I don't -- what we're talking about here is the gun points, I think. But I could be wrong about that. Do I misunderstand that, Gloria?

MS. BEDWELL: Yes, ma'am. Because the presently calculated drug amount includes only cocaine powder. And with the government's objection, the defendant was obtaining cocaine powder in order to covert it to crack cocaine which he then would distribute. The conspiracy charged in count one was possession with intent to distribute cocaine and crack cocaine. Our position was at the end of his

distribution activities was crack cocaine. So we were prepared to prove that the defendant was accountable for more than five and a half -- actually more than four and a half kilograms of crack cocaine, which would have established a base offense level of 38, as opposed to 32, which is the one contained in the presentence investigation report.

THE COURT: Well, either way, it would also entail the two points for the gun, would it not?

MS. BEDWELL: Yes, ma'am.

THE COURT: All right. Do you want to talk to your client some more about this or –

MR. FLEMING: Yes. I've just spoken very briefly while you were consulting with the U.S. Attorney. Mr. Davis informed me that he wants to move forward today and go ahead with the sentencing.

THE COURT: All right. Well, without hearing the evidence about converting the powder cocaine to crack cocaine, I find that the sentence proposed today or the sentencing range proposed today is reasonable. If I heard evidence about the conversion of crack cocaine, of this cocaine to crack cocaine, I might find that a level 38 is reasonable. But since the government is not going to proffer that, I am content to proceed today, if that's what Mr. Davis wants to do. Is that what you want to do, Mr. Davis?

THE DEFENDANT: Yes, ma'am.

THE COURT: All right. Well, then, I find the total offense level is 31 with a criminal history category of V. Are there any further objections?

MR. FLEMING: No, ma'am.

THE COURT: All right. Do you have anything else you want to say, Mr. Davis?

THE DEFENDANT: No, ma'am.

(*Id.* at 9 – 13).

The Court then announced a sentence at the low end of the guideline range, finding it appropriate "based on the facts of this case as presented by the government and agreed to by the parties at this time." (*Id.* at 13 – 15).

Davis later challenged the imposition of the firearm enhancement on appeal, but the Eleventh Circuit declined to consider the claim, finding that Davis had invited any error in the imposition the enhancement.   *See Davis*, 517 F. App'x at 842-43.  Specifically, the court noted:

> Defense counsel unambiguously agreed with the imposition of the firearm enhancement. Specifically, defense counsel informed the district court that the firearm issue had been resolved pursuant to an oral agreement with the government. When Davis personally expressed disagreement with the firearm enhancement, the district court asked Davis if he wished to continue with the current arrangement. Davis discussed his options with counsel, and his counsel stated, "Mr. Davis informed me that he wants to move forward today and go ahead with the sentencing." Accordingly, any error by the district court in regards to the firearm enhancement was invited by Davis…

*Id.* at 843.

In an affidavit attached to his § 2255 motion, Davis now asserts that, at sentencing, Fleming "strongly advised [him] to abandon [his] firearm objections[,]" "stated that the judge and prosecutor had it out for" Davis, and "stated that all people of Alabama are not like him." (Doc. 68-1 at 39 – 40).  "Out of fear for what [he] was told by" Fleming, Davis purportedly "agreed to abandon [his] firearm objections during sentencing." (*Id.* at 40).

Davis's claim of ineffective assistance of counsel in this regard is affirmatively contradicted by the record.  Given that the Government had objected

to the PSI and had expressed its intention to present evidence that could have exposed Davis to a base offense level as high as 38 (which, with a criminal history category of V, would have resulted in a sentencing range of 360 – life, *see* U.S.S.G. Ch. 5 Pt. A), Fleming did not act "outside the wide range of professionally competent assistance" in reaching a deal with the Government to abandon some of Davis's objections, including the objection to the firearm enhancement, in exchange for the Government foregoing presenting this evidence and withdrawing its objection to the acceptance of responsibility point. *Strickland*, 466 U.S. at 690. Certainly, Davis has not shown that "no competent counsel would have taken the action that his counsel did take" in this regard. *Brownlee*, 306 F.3d at 1059 (quotation omitted). Davis has also not shown that, but for Fleming abandoning the firearm charge, there a reasonable probability that the outcome would have been different, *see Strickland*, 466 U.S. at 694 – that is, that Davis would have received a lower sentence had the objection been pursued. The Government agreeing for forego pursuing further enhancements to the base offense level was expressly contingent upon Davis agreeing to forego his objection to the firearm objection, and Davis has not shown a reasonable probability that the Court would have both rejected all of the Government's objections to the PSI <u>and</u> would have sustained Davis's own objection to the firearm enhancement.

For this reason, Davis is due no relief on Claims 1(H)(ii) and 4(H)(ii).

### C.    *Motion to Amend § 2255 Motion (Doc. 75) (Claims 5(A) & (B))*

In his reply to the Government's response, Davis raised for the first time the contention that the Government "decietfully [sic], and deliberately" used "an uproven [sic] statement from and [sic] convicted felon[, co-conspirator Marco Alvarez], regarding the allege manufacturing of crack cocaine" in indicting Davis to produce a "fabricated count" to force Davis "into entering a less than favorable plea."  The Government "was fully aware of its actions," Davis claims, "because in an attempt to cover up the fabricated count, the government moved to dismiss it." The Government purportedly "knew or should have known that mere hearsay, which lacks substantial evidence can not be listed as a substantive offense/count in the indictment."  (Doc. 72 at 3 – 6, 13 – 14).  Davis subsequently filed a motion to amend his § 2255 motion, with a memorandum in support (Docs. 75 – 76), to formally add these contentions as grounds for relief, claiming that his conviction should be reversed both because the Government acted improperly and because counsel was ineffective for failing to challenge the indictment on this basis (Claims 5(A) and (B)).

Upon consideration, the undersigned will **RECOMMEND** that Davis's motion to amend (Docs. 75 – 76) be **GRANTED** so as to add Claims 5(A) and (B) to his § 2255 motion.   However, Claims 5(A) and (B) are without merit, as "the grand jury is not impeded by the evidentiary and procedural restrictions applicable to trial juries.   A grand jury investigation may be triggered by tips, rumors, evidence proffered by the prosecutor, or the personal knowledge of the grand jurors.   Moreover, the grand jury's sources of information are widely drawn, and the

validity of an indictment is not affected by the character of the evidence considered."
*United States v. York*, 428 F.3d 1325, 1332 (11th Cir. 2005) (per curiam) (citations
and quotations omitted).  *See also* Fed. R. Evid. 1101(d)(2) ("except for those on
privilege," excluding application of Federal Rules of Evidence, including those
governing hearsay, in grand-jury proceedings); *United States v. Trainor*, 376 F.3d
1325, 1331 n.3 (11th Cir. 2004) ("The Federal Rules of Evidence do not apply to
grand jury proceedings…"); *Trainor*, 376 F.3d at 1332 ("In the grand jury context,
where hearsay testimony may be presented, the witness testifying as to hearsay
statements still must be under oath.").  Thus, the Government did not err in relying
on Alvarez's testimony to secure an indictment, and counsel was not ineffective for
failing to raise this meritless issue.  For these reasons, Davis is due no relief on
Claims 5(A) and 5(B).[6]

## D.  *Ineffective Assistance of Counsel Claims on Direct Appeal (Claim 4)*

The Eleventh Circuit has stated:

> "Except in the rare instance when the record is sufficiently developed,
> we will not address claims for ineffective assistance of counsel on direct
> appeal." *Verbitskaya,* 406 F.3d at 1337. An ineffective assistance claim
> should usually be raised in a motion under 28 U.S.C. § 2255. *United
> States v. Patterson,* 595 F.3d 1324, 1328 (11th Cir. 2010).

*Curbelo*, 726 F.3d at 1267.

Thus, Ratliff was not deficient in failing to raise any ineffective assistance of

counsel claims on direct appeal, given the Eleventh Circuit's express preference for

---

[6] To the extent the motion to amend and supporting memorandum (Docs. 75 – 76) also
provide additional factual allegations and legal argument in support of Davis's other
claims, they do not alter the undersigned's determinations set forth herein.

addressing such claims in § 2255 proceedings.  For this reason, Davis is due no relief on Claim 4 and (with respect to Ratliff's performance) Claim 5(B).

### E.    *Procedural Default of Claims 2, 3, and 5(A)*

Even if Claims 2, 3, and 5(A) had merit (which they do not, *see supra*), the undersigned also finds that Davis has procedurally defaulted these claims because he did not raise them on direct appeal.  " 'Constitutionally ineffective assistance of counsel can constitute cause' under *Frady*" to excuse such a procedural default. *Brown v. United States*, 720 F.3d 1316, 1333 (11th Cir. 2013) (quoting *Holladay v. Haley,* 209 F.3d 1243, 1254 (11th Cir. 2000)).  " 'In order to do so, however, the claim of ineffective assistance must have merit.' "  *Id.* (quoting *United States v. Nyhuis,* 211 F.3d 1340, 1344 (11th Cir. 2000)).  Because Davis has not demonstrated a meritorious claim of ineffective assistance of counsel, *see supra*, he cannot overcome his procedural default these claims.  For this reason, he is due no relief on Claims 2, 3, and 5(A).

### F.    *Cumulative Error*

"The cumulative error doctrine provides that an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of a constitutional right to a fair trial, which calls for reversal." *United States v. Baker,* 432 F.3d 1189, 1223 (11th Cir. 2005) (quotation omitted). We address a claim of cumulative error by first considering the validity of each claim individually, and then examining any errors in the aggregate and the trial as a whole to determine whether the appellant was afforded a fundamentally fair trial. *See United States v. Calderon,* 127 F.3d 1314, 1333 (11th Cir.1997). However, where there is no error or only a single error, there can be no cumulative error. *United States v. Waldon,* 363 F.3d 1103, 1110 (11th Cir.2004).

*United States v. Hardy*, 389 F. App'x 924, 926-27 (11th Cir. 2010) (per curiam) (unpublished). *Accord, e.g.*, *United States v. House*, 684 F.3d 1173, 1210-11 (11th Cir. 2012).[7]   Because Davis has not shown any error, *see supra*, his claim of cumulative error must also fail.

### G.     Motion for Evidentiary Hearing (Doc. 73)

Because, as set for above, "the motion and the files and records of the case conclusively show that [Davis] is entitled to no relief," *Winthrop-Redin*, 767 F.3d at 1216, the undersigned will **RECOMMEND** that Davis's Motion for an Evidentiary Hearing (Doc. 73) be **DENIED** and that his § 2255 motion, as amended be **DENIED**.

### H.     Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned **RECOMMENDS** that a Certificate of Appealability be **DENIED** for Davis's § 2255 motion. 18 U.S.C. foll. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may only issue where "the applicant has made a

---

[7] "The Supreme Court has not directly addressed the applicability of the cumulative error doctrine in the context of an ineffective assistance of counsel claim. However, the Supreme Court has held, in the context of an ineffective assistance claim, that 'there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt.'" *Forrest v. Fla. Dep't of Corr.*, 342 F. App'x 560, 564-65 (11th Cir. 2009) (per curiam) (unpublished) (quoting *United States v. Cronic,* 466 U.S. 648, 659 n.26 (1984)).

substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2).

Where the district court "has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). *See also Miller-El*, 537 U.S. at 336 ("Under the controlling standard, a petitioner must show that reasonable jurists could debate whether  (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." (citations omitted and punctuation modified)).).   "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

"A prisoner seeking a COA must prove something more than the absence of frivolity or the existence of mere good faith on his or her part." *Miller-El*, 537 U.S. at 338 (quotations omitted).  The undersigned finds that reasonable jurists could not debate whether Davis's § 2255 motion to vacate should be resolved in a different manner or that any of the issues presented is adequate to deserve encouragement to proceed further.  Insofar as the undersigned has recommended dismissal of certain

claims as procedurally barred, the undersigned also finds that jurists of reason would not find such a procedural ruling debatable. Accordingly, Davis is not entitled to a Certificate of Appealability on any of his claims.

Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by petitioner, he may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation. *See, e.g.*, *Brightwell v. Patterson*, No. CA 11-0165-WS-C, 2011 WL 1930676, at *6 (S.D. Ala. Apr. 11, 2011), *report & recommendation adopted*, 2011 WL 1930662 (S.D. Ala. May 19, 2011);[8] *Griffin v. DeRosa*, No. 3:10cv342/RV/MD, 2010 WL 3943702, at *4 (N.D. Fla. Sep. 20, 2010) (providing for same procedure), *report & recommendation adopted sub nom. Griffin v. Butterworth*, 2010 W: 3943699 (N.D. Oct. 5, 2010).

## I.    *Appeal In Forma Pauperis*

"An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith." 28 U.S.C.A. § 1915(a)(3). A district court's finding "that an appeal would not be in good faith because no certificate of appealability had been issued . . . is not enough to explain why the appeal on the merits would not be in good faith, because the standard governing the issuance of a certificate of appealability is not the same as the standard for determining whether

---

[8] It should be noted that in that proceeding, the Eleventh Circuit (Judge Hull) also denied the petitioner's motion for certificate of appealability on October 11, 2011. (*See* Doc. 14 in CA-11-0165-WS-C.)

an appeal is in good faith. It is more demanding . . . [T]o determine that an appeal is in good faith, a court need only find that a reasonable person could suppose that the appeal has some merit." *Walker v. O'Brien*, 216 F.3d 626, 631-32 (7th Cir. 2000). *See also Weaver v. Patterson*, Civ. A. No. 11-00152-WS-N, 2012 WL 2568218, at *7 (S.D. Ala. June 19, 2012) (Nelson, M.J.), *report and recommendation adopted*, Civ. A. No. 11-00152-WS-N, 2012 WL 2568093 (S.D. Ala. July 3, 2012) (Steele, C.J.) ("An appeal may not be taken *in forma pauperis* if the trial court certifies in writing that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); *see* Fed. R. App. P. 24(a)(3)(A); *Lee v. Clinton*, 209 F.3d 1025, 1026 (7th Cir. 2000) (concluding that 'good faith' is 'an objective concept' and that 'not taken in good faith' is 'a synonym for frivolous'); *DeSantis v. United Techs, Corp.*, 15 F. Supp. 2d 1285, 1288–89 (M.D. Fla. 1998) (stating that good faith 'must be judged by an objective, not a subjective, standard' and that an appellant 'demonstrates good faith when he seeks appellate review of any issue that is not frivolous').  An appeal filed *in forma pauperis* is frivolous if 'it appears that the Plaintiff has little to no chance of success,' meaning that the 'factual allegations are clearly baseless or that the legal theories are indisputably meritless.' *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993)."). *But see, e.g., United States v. McCray*, No. 4:07CR20-RH, 2012 WL 1155471, at *2 (N.D. Fla. Apr. 5, 2012) ("Because the defendant has not obtained—and is not entitled to—a certificate of appealability, any appeal by the defendant will not be taken in good faith.  I certify under Federal Rule of Appellate Procedure 24(a) that any

appeal will not be taken in good faith and that the defendant is not otherwise entitled to proceed *in forma pauperis* on appeal.").

In light of the above-stated reasoning, the undersigned **RECOMMENDS** the Court certify that any appeal by Davis in this action would be without merit and therefore not taken in good faith and, accordingly, find that Davis is not entitled to appeal *in forma pauperis*.

## V.   Conclusion

In accordance with the foregoing analysis, it is **RECOMMENDED** that Davis's motion to amend (Doc. 75) be **GRANTED**, that his motion for an evidentiary hearing (Doc. 73) be **DENIED**, and that Davis's § 2255 motion (Doc. 68), as amended (*see* Docs. 75 – 76) be **DENIED** and **DISMISSED with prejudice**. Should that recommendation be adopted, it is further **RECOMMENDED** that Davis be found not entitled either to a Certificate of Appealability or to proceed *in forma pauperis* on appeal.

## VI.   Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c) (effective Aug. 1, 2015). The parties should note that under Eleventh Circuit Rule 3-1*,* "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and

recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."   11th Cir. R. 3-1.   In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 3rd day of August 2015.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**